UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | NO. CR09-335RSL |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER DENYING DEFENDANT |
| | ) | SCHWEDA'S MOTIONS TO SEVER |
| JAMES SCHWEDA and | ) | AND TO DISMISS INDICTMENT |
| JAY RAMOS, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

This matter comes before the Court on defendant Schweda's motions to sever defendants (Dkt. # 52) and to dismiss the indictment (Dkt. # 54). Having reviewed the submissions of the parties, the Court DENIES defendant's motions.

**A.     Motion to Dismiss Indictment**

Schweda argues there is authority "for dismissal of an Indictment where the quality of the evidence presented to the Grand Jury is in question." Motion at 11. However, the case Schweda cites did not in fact find that dismissal of the indictment was appropriate. See <u>United States v. Kennedy</u>, 564 F.2d 1329, 1338 (9th Cir. 1977). After reviewing the available case law, that court concluded:

ORDER DENYING DEFENDANT SCHWEDA'S MOTIONS TO SEVER AND TO DISMISS INDICTMENT

> We believe that the rule to be distilled from the authorities discussed must be that only in a flagrant case, and perhaps only where knowing perjury, relating to a material matter, has been presented to the grand jury should the trial judge dismiss an otherwise valid indictment returned by an apparently unbiased grand jury. To hold otherwise would allow a minitrial as to each presented indictment.

Id.  The question before the Court, then, is whether this is a "flagrant case" as described in Kennedy to justify the dismissal of Schweda's indictment.  Dismissal of an indictment is an extraordinary measure.  As the Supreme Court observed in Costello v. United States:

> Petitioner urges that this Court should exercise its power to supervise the administration of justice in federal courts and establish a rule permitting defendants to challenge indictments on the ground that they are not supported by adequate or competent evidence. No persuasive reasons are advanced for establishing such a rule. It would run counter to the whole history of the grand jury institution, in which laymen conduct their inquiries unfettered by technical rules. Neither justice nor the concept of a fair trial requires such a change. In a trial on the merits, defendants are entitled to a strict observance of all the rules designed to bring about a fair verdict. Defendants are not entitled, however, to a rule which would result in interminable delay but add nothing to the assurance of a fair trial.

350 U.S. 359, 363-364 (1956) (footnote omitted).  Rather than initiate a "minitrial as to each presented indictment" (Kennedy, 564 F.2d at 1338), a criminal defendant has the opportunity to challenge the sufficiency of the evidence presented against him by motion and at trial.

      On August 19, 2008, law enforcement officials executed a warrant on the house where Schweda and co-defendant Ramos resided in Seattle, Washington.  In the course of that search, DEA agents found large quantities of LSD, MDA, DMT, hashish, opium, hallucinogenic mushrooms, and marijuana in the residence, much of it in co-defendant Ramos' bedroom.  At the grand jury, DEA Agent Ellis testified, *inter alia*, that officers had found (1) large amounts of LSD in Ramos' room and in the common areas of the residence; (2) "packaging materials" in Schweda's room; (3) other drug paraphernalia in Schweda's room (two scales); and (4) DMT

ORDER DENYING DEFENDANT SCHWEDA'S MOTIONS TO SEVER AND TO DISMISS INDICTMENT   2

and marijuana in a backpack belonging to Schweda in Schweda's room.  Agent Ellis also testified that a manual belonging to Schweda containing information on how to manufacture LSD, DMT, and MDA was found in Schweda's room or in the greater residence and that several witnesses had identified Schweda as the source and manufacturer of large quantities of LSD and other illicit substances.

Schweda does not deny in this motion that controlled substances and scales were found in his room, but argues that Agent Ellis' testimony to the grand jury grossly misrepresented the facts because: (1) substances found in common areas of the residence and in Schweda's room initially thought to contain LSD were found not to contain LSD; (2) the illegal substances found in Schweda's backpack were actually MDA and marijuana, not DMT and marijuana; (3) the only "packaging material" found in Schweda's room was the packaging material holding the discovered MDA and marijuana; and (4) Agent Ellis led the grand jury to believe that the binder containing instructions on how to manufacture LSD and other substances was found in Schweda's room during the August 19, 2008 search when in fact the binder was proffered months later by a cooperating witness.

A review of Agent Ellis' grand jury testimony reveals that there may be some weaknesses in the government's proffered evidence.  However, this is not a "flagrant case" as described in <u>Kennedy</u>.  Contrary to defendant's argument that Agent Ellis perjured himself by claiming LSD was found in Schweda's room (<u>see</u> Reply at 3), Agent Ellis does in fact make clear that the LSD was found in co-defendant Ramos' room.  <u>See</u> Dkt. # 54, Exh. E at 16.  Additionally, even assuming the facts as presented in Schweda's motion, Agent Ellis' passing reference to

ORDER DENYING DEFENDANT SCHWEDA'S MOTIONS TO SEVER AND TO DISMISS INDICTMENT    3

"packaging material," while not entirely forthright, is a small piece of testimony in comparison to the total evidence presented to the grand jury. Moreover, no matter how much Schweda attempts to characterize this prosecution as an "LSD case" (see, e.g., Reply at 2), the grand jury in fact indicted Schweda for conspiracy to distribute LSD, DMT, and MDA. See Dkt. # 13. Schweda does not dispute that MDA was found in his room, that LSD was found in the greater residence, or that several witnesses testified that he was the source of these substances. While the provenance of the binder containing instructions on the manufacture of these substances is not clear to the Court, a witness has identified it as Schweda's. For these reasons, even assuming some weakness in Agent Ellis' testimony, the grand jury was presented with more than enough evidence to return an indictment against Schweda. The sufficiency and admissibility of that evidence will be determined later by motion and at trial. Mr. Schweda's motion to dismiss the indictment is DENIED.

**B.    Motion to Sever Defendants**

Schweda also moves to sever under Bruton v. United States, which held that a nontestifying co-defendant's confession that directly inculpates another defendant by name is not admissible at trial. 391 U.S. 123 (1968). In its response, the government agrees that the admission of co-defendant Ramos' statements implicating Schweda would violate Bruton and further represents that this testimony will not be offered at trial. See Dkt. # 57 at 3. Based on the government's representation, the Court finds no Bruton issue and DENIES Schweda's motion to sever.

**C.    Conclusion**

ORDER DENYING DEFENDANT SCHWEDA'S MOTIONS TO SEVER AND TO DISMISS INDICTMENT    4

1  For the foregoing reasons, defendant Schweda's motions to dismiss the indictment and to sever (Dkt. ## 52, 54) are DENIED.

DATED this 26th day of March, 2010.

*/s/ Robert S. Lasnik*
Robert S. Lasnik
United States District Judge