UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | NO. CR09-335RSL |
| Plaintiff, ) | |
| ) | |
| v. ) | ORDER DENYING DEFENDANT |
| ) | RAMOS' MOTIONS TO SUPPRESS |
| JAMES SCHWEDA and ) | STATEMENTS, TO SUPPRESS |
| JAY RAMOS, ) | PHYSICAL EVIDENCE, TO DISMISS |
| ) | FOR GOVERNMENTAL MISCONDUCT, |
| Defendants. ) | AND GRANTING MOTION FOR |
| ) | HENTHORNE DISCLOSURE |
| ) | |
| _____) | |

This matter comes before the Court on defendant Ramos' various motions (Dkt. ## 64, 67, 68, 69, 70), on which the Court heard argument on April 9, 2010.

**A.    Facts**

These facts are adduced from the submissions of the parties and from the testimony of Mr. Ramos and the law enforcement officers at the hearing.

On several occasions in the summer of 2008, defendant Ramos sold LSD to an undercover detective, Corey Williams.  Local and federal agents assigned to the case determined that Ramos lived at a residence located at 4054 38th Avenue, SW, Seattle, Washington.  On June

ORDER

11, 2008, June 19, 2008, and July 24, 2008, agents observed Ramos leaving the residence shortly after he had agreed to sell LSD to Detective Williams.

On August 18, 2008, Drug Enforcement Administration Task Force Officer Ryan Ellis obtained a search warrant for Ramos' residence from United States Magistrate Judge Brian A. Tsuchida. Dkt. # 64, Exh 1. Though Officer Ryan's supporting affidavit describes Ramos' residence at 4054 38th Avenue SW with particularity, the affidavit and warrant erroneously list the address as 4045 38th Avenue SW.   Dkt. # 64, Exh 2.  It is apparent that Officer Ellis merely transposed the numbers in his affidavit supporting his application for a warrant because he had personally observed Ramos' residence on several occasions and described it accurately in his affidavit as a two-story wood-framed structure, situated along the eastern roadway edge of 38th Avenue, SW, Seattle, Washington, painted green and red with white trim. Id.

On the morning of August 19, 2008, agents executed the search warrant.  Prior to entering the residence, agents knocked and announced their presence, but soon made forced entry when informed that another agent observed someone running out the back door.  Upon entry, the officers encountered Mr. Ramos, who screamed at them to "Get the fuck out of my house!" Though the officers repeatedly identified themselves as police and told Mr. Ramos to put his hands above his head and to get on the floor, Mr. Ramos did not comply and continued to shout at the officers.  Special Agent Trevino proceeded to force Mr. Ramos to the ground.  Mr. Ramos resisted, attempting to get up and lunging at the officers.  A struggle ensued.  During the struggle Ramos was punched in the face by DEA Group Supervisor Dial Johnson and his face also hit the floor.  After the altercation, the officers observed that Ramos had a swollen eye and a bloody

ORDER                                                       -2-

nose. They asked Ramos if he wanted medical assistance. Ramos refused and told them he "was fine."

According to all officers present, Ramos' demeanor changed dramatically after he had been subdued. He became calm and cooperative. Lynwood Police Detective William Johnson witnessed Officer Ellis reading Ramos his Miranda warnings. Both officers then questioned Ramos. At the hearing, Ellis and Johnson testified that Ramos agreed to answer questions without an attorney present, without showing any indication that the fight had confused or disoriented him, and that Ramos' answers were coherent and logical.

When asked about his drug dealing, Ramos initially told them that he did not sell drugs, did not possess LSD, and had no idea what they were talking about. Officer Ellis then introduced Ramos to Detective Williams, the undercover detective who had bought LSD from Ramos. Faced with this proof, Ramos changed his story and admitted that he had sold LSD to Williams. Ramos told the agents he had received the drugs from James Schweda A/K/A Bud Weather. Ramos identified Schweda's room in the house. Agent Ellis prepared a written statement for Ramos, which Ramos signed. Dkt. # 85, Exh. 2. The search of Ramos' residence turned up substantial amounts of controlled substances and drug paraphernalia.

When Officer Ellis realized the address listed in the search warrant and affidavit was incorrect, he walked around the neighborhood. He observed that there were no other residences on 38th Avenue, SW, Seattle, Washington matching the physical description in the search warrant and affidavit. At the evidentiary hearing, Ellis testified that the house at 4045 38th Avenue, SW, Seattle, Washington (the mistaken address), is on the opposite side of the street,

ORDER                                    -3-

approximately four residences to the North of Ramos' residence, and is painted grey with white trim.

**B.      Motions to Suppress Evidence and to Dismiss Indictment**

Ramos moves to suppress the evidence seized and to dismiss the underlying indictment, arguing (1) lack of probable cause, (2) that the search warrant lacked particularity, and (3) excessive use of force by police officers executing the warrant.

**1.      Probable Cause**

Ramos argues that because officers had not observed him selling drugs in the month previous to the execution of the warrant, probable cause was "stale" to search his residence. The case law does not support this conclusion.

A magistrate's determination of probable cause will not be reversed absent a finding of clear error. United States v. Schmidt, 947 F.2d 362, 371 (9th Cir. 1991). Accordingly, the appropriate standard of review for the court is "less probing than *de novo* review and shows deference to the issuing magistrate's determination." United States v. Hernandez, 937 F.2d 1490, 1494 (9th Cir. 1991). When deciding whether to issue a warrant, a magistrate judge must "make a practical common-sense decision whether, given all the circumstances set forth in the affidavit before him, . . . there is a fair probability that contraband or evidence of crime will be found in a particular place." Illinois v. Gates, 462 U.S. 213, 238-39 (1983).

Staleness must be evaluated "in light of the particular facts of the case and the nature of the criminal activity and property sought. With respect to drug trafficking, probable cause may continue for several weeks, if not months, of the last reported instance of suspect activity."

ORDER                                    -4-

United States v. Pitts, 6 F.3d 1366, 1369 (9th Cir. 1993) (citations and quotation marks omitted); see also United States v. Greany, 929 F.2d 523, 525 (9th Cir. 1991); United States v. Anguelo-Lopez, 791 F.2d 1394, 1399 (9th Cir. 1986). "When an affidavit 'establish[es] the existence of a widespread, firmly entrenched, and ongoing narcotics operation . . . staleness arguments lose much of their force.'" United States v. Leasure, 319 F.3d 1092, 1099 (9th Cir. 2002) (quoting United States v. Hernandez-Escargegna, 886 F.2d 1560, 1567 (9th Cir. 1989)).

Officer Ellis' affidavit presented sufficient evidence to indicate an entrenched and ongoing narcotics operation. Undercover officers had purchased relatively large quantities of LSD from Ramos several times over the previous months. Ramos had been observed leaving the residence before the buys. The Court finds that there was sufficient probable cause to believe that a search of Ramos' residence would uncover evidence of narcotics trafficking.

**2.    Particularity**

The warrant described Ramos' residence with sufficient particularity despite the fact that Officer Ellis erroneously switched the last two digits in the street address. In U.S. v. Brobst, 558 F.3d 982 (9th Cir. 2004), the court stated:

> The test for determining the validity of a warrant is (1) whether the warrant describes the place to be searched with "sufficient particularity to enable law enforcement officers to locate and identify the premises with reasonable effort," and (2) whether any reasonable probability exists that the officers may mistakenly search another premise.

Id. at 992 (quoting United States v. Mann, 389 F.3d 869, 876 (9th Cir. 2004)). In U.S. v. Turner, 770 F.2d 1508, 1511 (9th Cir. 1985), the Ninth Circuit concluded that a warrant listing the wrong address was sufficiently particular based on the following factors: (1) it described the

ORDER                                              -5-

house to be searched with great particularity and no nearby houses met the warrant's detailed description; (2) the address was reasonable for the location intended; (3) the house had been under surveillance; (4) the warrant was executed by an officer who knew which premises were intended to be searched; and (5) the premises that were intended to be searched were those actually searched.

The present case meets all of the grounds articulated by the Ninth Circuit in Turner. First, the affidavit describes Ramos' residence with great particularity and Officer Ellis testified that no other structures in the area bore a resemblance to it. Second, Ramos' address was reasonable for its location insofar as it was on the same city street as the residence listed in the search warrant and affidavit. Third, Ramos' residence had been under surveillance for approximately three months and Officer Ellis had personally seen Ramos leave this residence. Fourth, Ellis was on the search warrant execution team. Fifth, agents intended to search Ramos' residence and actually did so. Based on the aforementioned facts, there was clearly sufficient particularity to justify the search of Ramos' residence.

**3.     Governmental Misconduct**

Ramos also seeks to dismiss the indictment and to suppress the evidence because of the way in which the warrant was executed and he was beaten." Dkt. # 66 at 9. He argues that due process requires dismissal where there has been "outrageous government conduct." United States v. Williams, 547 F.3d 1187, 1199 (9th Cir. 2008). In this case, the Court finds there was no misconduct by law enforcement officers.

The Supreme Court outlined the nature of a substantive due process claim in the police

ORDER                                         -6-

brutality context in <u>Rochin v. California</u>, 342 U.S. 165 (1952). In <u>Rochin</u>, the Court reversed a conviction based on evidence obtained by subjecting the petitioner to a stomach pump in violation of his substantive due process rights. The <u>Rochin</u> Court reasoned that substantive due process is violated when the government engages in actions that "offend those canons of decency and fairness which express the notions of justice of English-speaking peoples even toward those charged with the most heinous offenses." <u>Id.</u> at 169. The Court did not articulate specific standards for identifying what constitutes a substantive due process violation but concluded that it lies where government conduct "shocks the conscience" or constitutes force that is "brutal" and offends "even hardened sensibilities." <u>Id.</u> at 172-73. The testimony in this case indicates that the physical force used to restrain and control Ramos was not excessive and directly proportional to his level of resistance. The Court finds that the officers' conduct was neither brutal nor shocks the conscience. Accordingly, the Court finds no basis for Ramos' motion to exclude the evidence or to dismiss the indictment.

**B.     Motion to Suppress Statements**

To prove a valid waiver of <u>Miranda</u> rights, the government must show that (1) the relinquishment of rights by the defendant was voluntary; and (2) the defendant was fully aware that the right was being waived and of the consequences of the waiver. <u>Moran v. Burbine</u>, 475 U.S. 412, 421 (1986). In assessing the validity of the waiver, courts analyze the totality of the circumstances. <u>Id.</u>

The totality of circumstances here clearly indicate a knowing and voluntary waiver. Indeed, by his own testimony at the evidentiary hearing, Mr. Ramos acknowledged that he

ORDER					-7-

voluntarily waived his Miranda rights. He was not intoxicated at the time. Although there was a physical dispute, the agents waited until Ramos was calm before they advised him of his rights. The fact that Ramos did not admit to any illegal activity until he was introduced to Detective Williams indicates that Mr. Ramos was lucid and exercising his free will. The Court finds that Ramos knowingly and intelligently waived his Miranda rights and that Ramos' statements are admissible.

**C.     Motion to Produce Drugs Seized**

The government does not oppose defendant Ramos' motion to produce drug exhibits for testing, but requests that Ramos submit a proposed order containing the specific exhibit numbers to be produced. The Court will grant the requested relief upon the submission of such an order.

**D.     Motion for Henthorne Disclosure**

In its response to Ramos' motion for Henthorne disclosure, the government represents, pursuant to United States v. Henthorne, 931 F.2d 29 (9th Cir. 1991), that it will review the files of the federal agents who will be witnesses at trial and will request review of the files of testifying state officers by their agencies. Dkt. # 77. The government further represents that it will provide all reportable material to the defense or report that there is no reportable material. At the evidentiary hearing on April 9, 2010, the government represented it had checked the files of Officer Ellis and that there was no Henthorne material to report.

**E.     Conclusion**

For the foregoing reasons, defendant Ramos' motions to dismiss the indictment (Dkt. # 69), to suppress evidence (Dkt. # 64), and to suppress statements to law enforcement

ORDER                                                                -8-

(Dkt. # 68) are DENIED. Ramos' unopposed motion for <u>Henthorne</u> disclosure (Dkt. # 70) is GRANTED. Ramos' motion to produce drugs seized (Dkt. # 67) is conditionally GRANTED subject to the receipt of a proper order as indicated in the government's response.

DATED this 16th day of April, 2010.

_____
Robert S. Lasnik
United States District Judge

ORDER                                              -9-